UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- x
                                :

SUSAN BARNABEO,                :     **05** **CV**    **6620**

                         Plaintiff,   :    05 civ\_\_\_\_

       -against-          :    **COMPLAINT**    **JUDGE HOLWELL**

iN DEMAND, L.L.C.,       :    PLAINTIFF DEMANDS   ECF Case

                          :    TRIAL BY JURY

                 Defendant.   :

                                  :
------------------------------------------------- x

      Plaintiff, Susan Barnabeo, by her attorneys, Liddle & Robinson, L.L.P., for her

complaint alleges as follows:

RECEIVED JUL 2 2 2005 U.S.D.C. S.D. N.Y. CASHIERS

## THE PARTIES

    1.   Ms. Barnabeo is a female over the age of 40.  Her current address is 2258

Nolting Road, Louisa, Virginia 23093.  Ms. Barnabeo was employed by defendant, iN Demand,

L.L.C. ("iN Demand"), from August 16, 1999 until February 9, 2004 as Senior Vice President,

Business Affairs and General Counsel.  At all relevant times, Ms. Barnabeo worked for iN

Demand in New York, New York.


    2.   Upon information and belief, iN Demand is a limited liability company

organized and existing under the laws of Delaware with its principal place of business at 345

Hudson Street, New York, New York 10014.

## THE NATURE OF THE ACTION

3.   This is a civil action for damages and remedies brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA"); the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1000 et seq. ("ERISA"); the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq.; the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.; the New York Labor Law § 190 et seq.; and for breach of contract.

## JURISDICTION AND VENUE

4.   Jurisdiction is founded upon 28 U.S.C. § 1331 and principles of supplemental jurisdiction under 28 U.S.C. § 1367.

5.   Ms. Barnabeo filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 16, 2004, a copy of which is annexed hereto as Exhibit A.  Ms. Barnabeo received from the EEOC a Notice of Right to Sue dated April 26, 2005, a copy of which is annexed hereto as Exhibit B.

6.   Ms. Barnabeo served copies of this Complaint upon the New York City Commission on Human Rights and the Corporation Counsel prior to filing it in the United States District Court.

7.   Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Ms. Barnabeo's claims occurred in the Southern District of New York.

## FACTS

8.   Ms. Barnabeo commenced employment with iN Demand on August 16, 1999, when she was hired as Senior Vice President, Business Affairs and General Counsel. Before joining iN Demand, Ms. Barnabeo worked in the legal field for over a decade.

9.   Subsequent to Ms. Barnabeo's hire, in or around July 2000, Stephen Brenner was named the President and Chief Executive Officer of iN Demand.

10. Throughout the course of her employment with iN Demand, Ms. Barnabeo was well qualified for the positions she held and always performed her duties in a diligent, professional and competent manner.

11. Despite Ms. Barnabeo's qualifications and excellent job performance, Ms. Barnabeo was subjected to discrimination and sexual harassment on an ongoing basis and was wrongfully terminated because of her sex/gender and age and in retaliation for her complaints about discrimination and sexual harassment by Mr. Brenner.

12. Over the course of her employment, Ms. Barnabeo reported to iN Demand's Vice President of Human Resources, Claire Kostbar, the following discriminatory and

harassing actions on the part of Mr. Brenner, which Ms. Barnabeo had either observed or learned about from other iN Demand employees:

- In early 2001, during a meeting in which Ms. Barnabeo was reporting the progress of renegotiating a deal, Mr. Brenner said to her, "I think if you would agree to date [male client], you could get him to do anything you wanted."

- Also in early 2001, Mr. Brenner tried to persuade his secretary to date his friend.

- During iN Demand's dispute with a female employee who alleged improper conduct by Mr. Brenner in early 2001, he told a senior male executive about the matter (in violation of iN Demand's policy regarding confidentiality) and reportedly said "Like if I was going to do something, I'd do it with her."

- In early 2001, a male senior executive related to Ms. Barnabeo that Mr. Brenner often interrupted business conversations held in his office to comment on the attire and appearance of young female employees that passed by his open door.

- In November 2001, Ms. Barnabeo, upon arriving at Mr. Brenner's office for a scheduled meeting where several male employees were already present, was told by Mr. Brenner that he was about to tell a joke (apparently intended for men only), and asked her to step outside into the hallway, close his office door and wait outside the door until he had finished the joke.

• In January 2002, a senior male executive told Ms. Barnabeo that female employees complained to him that Mr. Brenner stares at their chests when talking to them.  He also commented that Mr. Brenner constantly visited the cubicles of the young female staff.

13. Other incidents of discrimination and harassment experienced by or learned of by Ms. Barnabeo are as follows:

• In December 2000, Ms. Barnabeo was informed by a male senior executive that Mr. Brenner inappropriately hugged and kissed female employees at a company gathering.  An observer remarked, "Thank goodness Susan isn't here to see this!"

• Mr. Brenner had a constant habit during business meetings, convened in his office, of sitting too close on his couch to women in general, including Ms. Barnabeo.  Ms. Barnabeo was uncomfortable with this, and started moving to a chair to avoid Mr. Brenner's behavior.  Another female employee told Ms. Barnabeo in early to mid-2001 of her experience with this inappropriate behavior and her resulting discomfort.

• In November 2001, at an industry awards dinner, Mr. Brenner made a point of circling the table to kiss all the women.  At the end of the event, Mr. Brenner gathered the women in a group hug and said "Here are all my girls" and then said "I

better get out of here before I get myself in trouble." Ms. Kostbar was also a witness to this incident.

●In November 2001, Mr. Brenner, in describing a female candidate for a senior marketing position, said she came across as "too smart" and "too much like a know-it-all." He then said that his wife told him that that was a quality he would like if the candidate were not a female. He also stated that "she's not an ugly woman, but there is a hardness about her," and that he felt that people would have difficulty "warming up to her."

●In the Summer of 2002, while having a conversation with Ms. Barnabeo in the hall, Mr. Brenner reached out and made several attempts to remove a stray hair from her chest.

●In March 2003, Ms. Kostbar related an incident to Ms. Barnabeo when Mr. Brenner came to her office with a picture of what she described as a "provocatively dressed" woman that Mr. Brenner had cut out of a newspaper, saying that the woman in the picture reminded him of one of iN Demand's female marketing employees and asking her opinion as to whether he could give the picture to that employee.

●Mr. Brenner routinely sent sexually explicit and misogynistic e-mails to a group of male employees at iN Demand, in violation of iN Demand's policy.

14. In March 2003, Ms. Barnabeo again went to Human Resources to discuss the pattern of hostile environment and discrimination that she was experiencing.   It was agreed to table further discussion and action until the completion of a major transaction that Mr. Brenner and Ms. Barnabeo were involved in.   In the interim, Ms. Barnabeo was advised by Robert Jacobson, then COO of the company, that Mr. Brenner would probably be gone by the end of the year and that making this an issue now would only lead to Mr. Brenner's "making [her] life more miserable" in the meantime.   When Ms. Barnabeo conveyed this concern to Ms. Kostbar, the company took no further action on her complaints.

15. In June 2003, after another in a long line of incidents in which Mr. Brenner screamed at and disparaged Ms. Barnabeo to her staff, senior executives and other iN Demand employees, this time referring to her as a "prima donna," she made another formal complaint to Human Resources, stating that Mr. Brenner's behavior was "hostile and harassing" and demanding that this behavior cease immediately.  Again, no action was taken.

16. Upon information and belief, following Ms. Barnabeo's June 2003 complaint, Mr. Brenner stormed into the office of a male senior executive, demanding to know whether he was the one who informed Ms. Barnabeo of the various events and statements detailed above.  Upon information and belief, that male executive falsely denied having done so because he feared Mr. Brenner would retaliate against him.

17. Also over the course of her employment, Ms. Barnabeo was treated less favorably by Mr. Brenner than were her male colleagues.  For example:

●In the Summer of 2001, during the renegotiation of Ms. Barnabeo's employment contract, Mr. Brenner demanded concessions from Ms. Barnabeo that were not incorporated into iN Demand's employment contracts with senior male executives.

●Mr. Brenner would often rant and rave to Ms. Barnabeo's staff, and to all within earshot of her office, when he did not find her at her desk. In fact, Ms. Barnabeo was in her office and available more often and on a more consistent basis than male senior executives. Upon information and belief, Mr. Brenner never acted in the same fashion toward any male employee, senior executive or otherwise.

●Mr. Brenner further diminished Ms. Barnabeo's stature within iN Demand by consistently failing to include her in discussions, by engaging in activities that created legal risk without consulting her, and by informing other iN Demand executives that involving Ms. Barnabeo in such matters was unnecessary.

●In October 2003, Mr. Brenner took issue with Ms. Barnabeo's having taken what he attempted to characterize as an expensive and unnecessary trip. In reality, the only expense paid by iN Demand was $400 for Ms. Barnabeo's plane ticket, and the cost of her transportation to and from the airport. During that trip, Ms. Barnabeo participated in the renegotiation of a deal that saved iN Demand over $500,000. Mr. Brenner did not take to task the male executive who accompanied Ms. Barnabeo, and never took issue with the travel of other senior

male executives, who traveled far more frequently – and often for less significant business purposes – than did Ms. Barnabeo.

● At the January 6, 2004 Board meeting, when Ms. Barnabeo gave advice in response to a question from one of the attendees, Mr. Brenner vehemently (and erroneously) characterized her legal advice as incorrect.  Mr. Brenner did not treat senior male executives with whom he disagreed in such a manner in the presence of the Board.

18. On January 15, 2004, Ms. Barnabeo was informed for the first time of staff changes to be made as part of a reorganization of iN Demand to be implemented on January 26, 2004.  Although several meetings and discussions had previously taken place within the Company regarding these changes, Ms. Barnabeo had not been consulted in any way despite the serious legal issues presented by the reorganization.  In the weeks following, Ms. Barnabeo was consistently excluded from meetings in which the reorganization was discussed.

19. In a meeting with Ms. Barnabeo and other senior managers on January 20, 2004, Mr. Brenner stated that Ms. Barnabeo's suggestions and their rationale were ridiculous. Shortly thereafter, a male senior manager was brought into the discussion, who merely repeated Ms. Barnabeo's exact suggestions and rationale.  Mr. Brenner responded to the male manager's comments by saying "You convinced me" and adopted the courses of action that Ms. Barnabeo had originally recommended.  This was not the first time that such an event had occurred, but in this instance Mr. Brenner's criticisms of Ms. Barnabeo's suggestions were particularly hostile.

20. The next day, Ms. Barnabeo learned for the first time from a senior female executive that Mr. Brenner had restructured much of senior management the previous Monday. As a result of this reorganization, all of the female members of senior management who had previously reported to directly to Mr. Brenner, including Ms. Kostbar, no longer reported directly to him, but instead reported to other senior male executives, who themselves reported to Mr. Brenner.  Mr. Brenner never informed Ms. Barnabeo of the restructuring.

21. On February 9, 2004, Mr. Brenner fired Ms. Barnabeo without cause, stating only that he "need[ed] to make a change."  Mr. Brenner forced Ms. Barnabeo to pack and leave the office immediately, while male employees where permitted several weeks to prepare for their termination and departure.

22. As a result of the immediate termination of Ms. Barnabeo's employment, she was deprived of a bonus for her work in 2003 (bonuses were announced only a few days after her termination), as well as the opportunity to vest in and exercise long-term compensation tranches, whereas a senior male executive selected for termination only a few weeks earlier was given the opportunity to vest.  In addition, the terms of Ms. Barnabeo's severance offer were inconsistent with iN Demand policy and practice and markedly inferior to those offered to senior male executives, including a senior male executive fired only a few weeks before Ms. Barnabeo.

23. Three months later, in May 2004, Mr. Brenner's employment as President and CEO of iN Demand was terminated.  Upon information and belief, Mr. Brenner's severance terms differed significantly from those offered to Ms. Barnabeo in that they were substantially

10

more generous.  Most notably, despite Mr. Brenner's improper and unlawful conduct, the Board did not require Mr. Brenner to leave the premises immediately but rather allowed him to choose the timing and manner of his departure.  The company also issued a flattering press release regarding Mr. Brenner's alleged contributions to iN Demand.

24. Subsequent to Ms. Barnabeo's firing, the Company appointed a male under age 40 as her successor as head of Business Affairs and General Counsel, and has recently terminated the employment of the remaining female senior vice president and most of the other remaining senior women executives over 40.   As a result, virtually all senior positions in the Company are held by males, predominantly by males under 40.

### FIRST CLAIM

(Sex Discrimination Under Title VII)

25. Ms. Barnabeo repeats and realleges the allegations contained in paragraphs 1 through 24 above as if separately set forth herein.

26. At all relevant times, Ms. Barnabeo was an "employee" under Title VII, 42 U.S.C. § 2000e(f).

27. iN Demand is an "employer" under Title VII, 42 U.S.C. § 2000e(b).

28. By its actions detailed above, iN Demand has unlawfully discriminated against Ms. Barnabeo on the basis of her sex in violation of Title VII.

29. As a result of iN Demand's discriminatory conduct, Ms. Barnabeo has suffered substantial damages, including emotional pain and mental anguish, in an amount to be determined at trial.

30. iN Demand's discriminatory conduct was taken with reckless indifference to Ms. Barnabeo's rights.  Ms. Barnabeo is therefore entitled to punitive damages under Title VII.

## SECOND CLAIM

(Sex Discrimination Under the
New York State Human Rights Law)

31. Ms. Barnabeo repeats and realleges the allegations contained in paragraphs 1 through 30 above as if separately set forth herein.

32. At all relevant times, Ms. Barnabeo was an "employee" for purposes of § 296 of the New York State Human Rights Law.

33. iN Demand is an "employer" for purposes of § 292 of the New York State Human Rights Law.

34. By its actions set forth above, iN Demand unlawfully discriminated against Ms. Barnabeo on the basis of her sex in violation of the New York State Human Rights Law.

35. As a result of iN Demand's discrimination, Ms. Barnabeo has suffered damages, including emotional pain and mental anguish, in an amount to be determined at trial.

## THIRD CLAIM

(Gender Discrimination Under the
New York City Human Rights Law)

36. Ms. Barnabeo repeats and realleges the allegations contained in paragraphs 1 through 35 above as if separately set forth herein.

37. Ms. Barnabeo is a "person" under § 8-102(1) of the New York City Human Rights Law.

38. iN Demand is an "employer" subject to the provisions of the New York City Human Rights Law under § 8-102(5) of the Administrative Code.

39. By its actions detailed above, iN Demand has unlawfully discriminated against Ms. Barnabeo on the basis of her gender in violation of the New York City Human Rights Law.

40. By reason of the foregoing, Ms. Barnabeo suffered damages, including emotional pain and mental anguish, in an amount to be determined at trial.

41. Upon information and belief, iN Demand's discriminatory conduct was taken with reckless indifference to Ms. Barnabeo's rights, entitling her to punitive damages under the New York City Human Rights Law.

## FOURTH CLAIM

(Sexual Harassment Under Title VII)

42. Ms. Barnabeo repeats and realleges the allegations contained in paragraphs 1 through 41 as if separately set forth herein.

43. Mr. Brenner's unwelcome harassment of Ms. Barnabeo, as detailed above, was based on her sex and was sufficiently severe or pervasive so as to alter the terms or conditions of her employment and create a discriminatorily hostile work environment.

44. Defendant had either actual or constructive knowledge of this harassment and failed to take remedial action.

45. Mr. Brenner's harassment of Ms. Barnabeo culminated in a tangible adverse employment action – the termination of her employment.

46. By its actions detailed above, iN Demand has unlawfully discriminated against Ms. Barnabeo because of her sex in violation of Title VII.

47. By reason of the foregoing, Ms. Barnabeo has suffered damages, including emotional distress and mental anguish, in an amount to be determined at trial.

48. Upon information and belief, Defendant's discriminatory conduct was engaged in with malice or reckless indifference to Ms. Barnabeo's federally protected rights, entitling her to punitive damages under Title VII.

### FIFTH CLAIM

(Sexual Harassment Under the
New York State Human Rights Law)

49. Ms. Barnabeo repeats and realleges the allegations contained in paragraphs 1 through 48 above.

50. Mr. Brenner's treatment of Ms. Barnabeo and other women in the workplace had the effect of creating an abusive and hostile work environment on the basis of their sex.

51. The harassment of Ms. Barnabeo because of her sex was so offensive, severe and pervasive that it altered the terms and conditions of her employment.

52. Mr. Brenner's conduct toward Ms. Barnabeo was so patently offensive and pervasive that it constituted willful discrimination because of Ms. Barnabeo's sex, in violation of § 296 of the New York State Human Rights Law.

53. By reason of the foregoing, Ms. Barnabeo suffered damages in an amount to be determined at trial.

## SIXTH CLAIM

(Sexual Harassment Under the
New York City Human Rights Law)

54. Ms. Barnabeo repeats and realleges the allegations contained in paragraphs 1 through 53 above.

55. The conduct of Mr. Brenner directed at Ms. Barnabeo and other women in the workplace because of their gender, had the effect of creating an abusive and hostile work environment.

56. The harassment of Ms. Barnabeo because of her sex was so offensive, severe and pervasive that it altered the terms and conditions of Ms. Barnabeo's employment.

57. Defendant's conduct toward Ms. Barnabeo constitutes willful discrimination because of Ms. Barnabeo's sex, in violation of § 8-107 of the New York City Human Rights Law.

58. By reason of the foregoing, Ms. Barnabeo suffered damages, including emotional distress and mental anguish, in an amount to be determined at trial.

59. Upon information and belief, Defendant's conduct was taken with reckless indifference to Ms. Barnabeo's rights, entitling Ms. Barnabeo to punitive damages under § 8-502 of the New York City Human Rights Law.

## SEVENTH CLAIM

(Retaliation Under Title VII)

60. Ms. Barnabeo repeats and realleges the allegations contained in paragraphs 1 though 59 as if separately set forth herein.

61. Ms. Barnabeo opposed Defendant's unlawful, discriminatory employment practices and engaged in protected activity under Title VII by asserting to her supervisors and to Human Resources that she believed that she was being discriminated against.

62. Defendant retaliated against Ms. Barnabeo for having engaged in the protected activity described above, including by terminating her employment.

63. Defendants' actions constitute discrimination and retaliation against Ms. Barnabeo in violation of Title VII.

64. By reason of the foregoing, Ms. Barnabeo has suffered damages, including emotional distress and mental anguish, in an amount to be determined at trial.

65. Upon information and belief, Defendant's retaliation was engaged in with malice and/or reckless indifference to Ms. Barnabeo's federally protected rights.  Ms. Barnabeo is therefore entitled to punitive damages under Title VII.

## EIGHTH CLAIM

(Retaliation Under the New York State Human Rights Law)

66. Ms. Barnabeo repeats and realleges the allegations contained in paragraphs 1 though 65 as if separately set forth herein.

67. Ms. Barnabeo opposed Defendant's unlawful, discriminatory employment practices and engaged in protected activity under New York State Human Rights Law by asserting to her supervisors and to Human Resources that she believed that she was being discriminated against.

68. Defendant retaliated against Ms. Barnabeo for having engaged in the protected activity described above, including by terminating her employment.

69. Defendant's actions constitute discrimination and retaliation against Ms. Barnabeo in violation of the New York State Human Rights Law, § 296.

70. By reason of the foregoing, Ms. Barnabeo has suffered damages in an amount to be determined at trial.

## NINTH CLAIM

(Retaliation Under the New York City Human Rights Law)

71. Ms. Barnabeo repeats and realleges the allegations contained in paragraphs 1 though 70 as if separately set forth herein.

72. Ms. Barnabeo opposed Defendant's unlawful, discriminatory employment practices and engaged in protected activity under the New York City Human Rights Law by asserting to her supervisors and to Human Resources that she believed that she was being discriminated against.

73. Defendant retaliated against Ms. Barnabeo for having engaged in the protected activity described above, including by terminating her employment.

74. Defendant's actions constitute discrimination and retaliation against Ms. Barnabeo in violation of the New York City Human Rights Law, § 8-107.

75. By reason of the foregoing, Ms. Barnabeo has suffered damages, including emotional distress and mental anguish, in an amount to be determined at trial.

76. Upon information and belief, Defendant's retaliatory actions against Ms. Barnabeo were taken with reckless indifference to Ms. Barnabeo's rights, entitling her to punitive damages under the New York City Human Rights Law.

## TENTH CLAIM

(Age Discrimination Under the ADEA)

77. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 76 as if separately set forth herein.

78. At all relevant times, Ms. Barnabeo was an "employee" under the ADEA, 29 U.S.C. § 630(f).

79. Upon information and belief, iN Demand is an "employer" under the ADEA, 29 U.S.C. § 630(b).

80. By its actions detailed above, iN Demand has unlawfully discriminated against Ms. Barnabeo on the basis of her age in violation of the ADEA.

81. By reason of the foregoing, Ms. Barnabeo suffered damages, including emotional pain and mental anguish, in an amount to be determined at trial.

82. Upon information and belief, iN Demand's conduct was willful, entitling Ms. Barnabeo to liquidated damages pursuant to 29 U.S.C. § 626(b).

## ELEVENTH CLAIM

(Age Discrimination Under the
New York State Human Rights Law)

83. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 82 as if separately set forth herein.

84. By its actions detailed above, iN Demand has unlawfully discriminated against Ms. Barnabeo on the basis of her age in violation of the New York State Human Rights Law.

85. By reason of the foregoing, Ms. Barnabeo suffered damages, including emotional pain and mental anguish, in an amount to be determined at trial.

## TWELFTH CLAIM

(Age Discrimination Under the
New York City Human Rights Law)

86. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 85 as if separately set forth herein.

87. By its actions detailed above, iN Demand has unlawfully discriminated against Ms. Barnabeo on the basis of her age in violation of the New York City Human Rights Law.

88. By reason of the foregoing, Ms. Barnabeo suffered damages, including emotional pain and mental anguish, in an amount to be determined at trial.

89. Upon information and belief, iN Demand's discriminatory conduct was taken with reckless indifference to Ms. Barnabeo's rights, entitling her to punitive damages under the New York City Human Rights Law.

## THIRTEENTH CLAIM

(Breach of Contract)

90. Ms. Barnabeo repeats and re-alleges the allegations contained in paragraphs 1 through 89 as if separately set forth herein.

91. On January 15, 2002, Ms. Barnabeo and iN Demand entered into an employment agreement that provided, in part, for a three-year term of employment commencing as of August 16, 2001 and ending August 15, 2004.

92. Ms. Barnabeo performed all of the terms and conditions of the parties' agreement.

93. iN Demand, without cause, unlawfully breached its agreement with Ms. Barnabeo by terminating her employment prior to August 15, 2004, failing to continue to pay her salary through that date, and forfeiting her long-term compensation.

94. iN Demand's unlawful breach of the agreement has caused Ms. Barnabeo to suffer damages in an amount to be determined at trial.

## FOURTEENTH CLAIM

(Violation of the New York Labor Law)

95. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 94 as if separately set forth herein.

96. iN Demand's willful failure to pay Ms. Barnabeo the wages and/or severance she is owed constitutes a violation of Article 6 of the New York Labor Law.

97. Based upon the foregoing, Ms. Barnabeo has suffered damages in an amount to be determined at trial.

## FIFTEENTH CLAIM

(Violation of ERISA)

98. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 97 as if separately set forth herein.

99. Upon information and belief, each of iN Demand's plans, practices and policies relating to 401(k) accounts and/or severance constitutes an employee benefit plan under ERISA, and Ms. Barnabeo is a participant in one or more of such plans.

100.     iN Demand has willfully failed and refused to pay Ms. Barnabeo any of the severance benefits to which she is entitled under the terms of said plans.

101.     In addition, iN Demand improperly failed to deposit deductions from Ms. Barnabeo's paycheck, as well as the company's required match, into her 401(k) account in violation of applicable plans.

102.     By reason of the foregoing, Ms. Ferrand has suffered damages, and is entitled to payment under the most favorable plan, policy or practice applicable to her.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A.  On her First Claim, back pay in an amount to be determined at trial, front pay in lieu of reinstatement if the court finds it appropriate in equity (otherwise unconditional reinstatement to her prior position), compensatory damages, punitive damages, attorneys' fees, costs and interest;

B.  On her Second Claim, back pay in an amount to be determined at trial, front pay in lieu of reinstatement if the court finds it appropriate in equity (otherwise unconditional reinstatement to her prior position), compensatory damages, costs and interest;

C.  On her Third Claim, back pay in an amount to be determined at trial, front pay in lieu of reinstatement if the court finds it appropriate in equity (otherwise unconditional

reinstatement to her prior position), compensatory damages and punitive damages, attorneys' fees, costs and interest;

D.  On her Fourth Claim, back pay in an amount to be determined at trial, front pay in lieu of reinstatement if the court finds it appropriate in equity (otherwise unconditional reinstatement to her prior position), compensatory damages, punitive damages, attorneys' fees, costs and interest;

F.  On her Fifth Claim, back pay in an amount to be determined at trial, front pay in lieu of reinstatement if the court finds it appropriate in equity (otherwise unconditional reinstatement to her prior position), compensatory damages, costs and interest;

G.  On her Sixth Claim, back pay in an amount to be determined at trial, front pay in lieu of reinstatement if the court finds it appropriate in equity (otherwise unconditional reinstatement to her prior position), compensatory damages and punitive damages, attorneys' fees, costs and interest;

H.  On her Seventh Claim, back pay in an amount to be determined at trial, front pay in lieu of reinstatement if the court finds it appropriate in equity (otherwise unconditional reinstatement to her prior position), compensatory damages, punitive damages, attorneys' fees, costs and interest;

I.     On her Eighth Claim, back pay in an amount to be determined at trial, front pay in lieu of reinstatement if the court finds it appropriate in equity (otherwise unconditional reinstatement to her prior position), compensatory damages, costs and interest;

J.     On her Ninth Claim, back pay in an amount to be determined at trial, front pay in lieu of reinstatement if the court finds it appropriate in equity (otherwise unconditional reinstatement to her prior position), compensatory damages and punitive damages, attorneys' fees, costs and interest;

K.     On her Tenth Claim, back pay in an amount to be determined at trial, front pay in lieu of reinstatement if the court finds it appropriate in equity (otherwise unconditional reinstatement to her prior position), compensatory damages, liquidated damages, attorneys' fees, costs and interest;

L.     On her Eleventh Claim, back pay in an amount to be determined at trial, front pay in lieu of reinstatement if the court finds it appropriate in equity (otherwise unconditional reinstatement to her prior position), compensatory damages, costs and interest;

M.     On her Twelfth Claim, back pay in an amount to be determined at trial, front pay in lieu of reinstatement if the court finds it appropriate in equity (otherwise unconditional reinstatement to her prior position), compensatory damages and punitive damages, attorneys' fees, costs and interest;

N.    On her Thirteenth Claim, compensatory damages in an amount to be determined at trial, plus costs and interest;

O.    On her Fourteenth Claim, compensatory damages in an amount to be determined at trial, liquidated damages equal to 25% of the compensation withheld, attorneys' fees, costs and interest;

P.    On her Fifteenth Claim, compensatory damages under the most favorable plan, practice or policy applicable to plaintiff, attorneys' fees, costs and interest; and

Q.    Such other and further relief as the Court deems just and proper.

Dated: New York, New York
      July 22, 2005

LIDDLE & ROBINSON, L.L.P.

By: *Robert S. Clemente*
      Robert S. Clemente (RC 1608)
Attorneys for Plaintiff
800 Third Avenue
New York, New York 10022
(212) 687-8500